*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DELGADO, Minors.

UNPUBLISHED
August 5, 2021

No. 355576
Genesee Circuit Court
Family Division
LC No. 18-134961-NA

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children, ND and DD, under MCL 712A.19b(3)(a)(*ii*) (parent has deserted child for 91 or more days and has not sought custody during that period), (b) (physical injury or abuse),[1] (c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to the parent). We affirm.

## I. BACKGROUND

In March 2018, petitioner, the Department of Health and Human Services (DHHS) filed a petition requesting, in relevant part, that ND be removed from respondent's care. The petition noted that respondent had a prior history with CPS for substance abuse, improper supervision, and physical abuse of two older children not at issue in this matter. She had previously spanked one of the older children hard enough to cause severe bruising. She had been offered parenting classes, substance abuse services, and mental health services, but she had failed to consistently attend or benefit from those services. The petition alleged that when NG was born, his meconium screen came back positive for cocaine and that respondent reported she used crack cocaine on a daily basis before he was born. The petition recounted an incident that occurred while the CPS worker

---

[1] It is unclear whether the trial court applied MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse to child or sibling) or (b)(*ii*) (failure to prevent physical injury or abuse to child or sibling). Furthermore, as petitioner notes on appeal, it did not seek termination under subdivision (b).

was present, during which respondent and ND's father "began screaming and shouting at one another," culminating in the father becoming physically aggressive, bumping into the case worker, charging into the path of ND's baby seat and causing ND to cry, and yelling, " 'I'm beating all your a**es today!' " The father was removed by the police, whereupon respondent stated that " 'he beats my a** all the time.' " ND's paternal grandmother opined that the relationship between respondent and ND's father was "very dysfunctional and they 'feed off each other.' " Several allegations generally indicated that respondent and ND's father were in the practice of stealing things to pay for drugs. DHHS alleged that respondent was "kicked out" of her mother's home and that respondent had mental health issues but was not taking any medication or participating in treatment. According to DHHS, respondent agreed to a safety plan in which ND would stay with his paternal grandmother until she began services. ND was removed from respondent's care and remained with his paternal grandmother for the duration of the case.

Respondent was ordered to comply with and benefit from parent education, marital counseling, substance abuse treatment, and random drug screening. Respondent was ordered to obtain and maintain adequate housing and a legal source of income. Respondent was also ordered to complete a mental health evaluation and comply with all recommendations from the evaluation. Respondent never attended marital counseling and never participated in a mental health evaluation. Testimony established that respondent failed to benefit from the other services.

In May 2019, DHHS filed a termination petition, alleging that respondent failed to comply with required mental health and substance abuse services, failed to complete required parenting classes, failed to participate in required marital counseling with ND's father, missed several scheduled visits with ND, missed most of her required drug screens, and tested positive for cocaine on all ten of the drug screens she completed. DD was born approximately a month later. In August 2019, DHHS filed a petition requesting that DD be removed from respondent's care, generally reiterating the substance of the May 2019 petition, but also noting that although respondent did not test positive for substances at the time of DD's birth, respondent did test positive for cocaine two days later and tested positive again almost three weeks later. At the time the petition was filed, respondent and DD were living with respondent's mother. DD was removed from respondent's care but remained with the maternal grandmother. By November 2019, ND and DD were living with the paternal grandmother. In February 2020, DHHS filed a termination petition. Respondent's parental rights to the children were terminated on October 28, 2020. This appeal followed.

## II. STATUTORY GROUNDS

First, respondent argues that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), and (j). We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

Termination under MCL 712A.19b(3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. Further, "the harm in question need not be physical; a risk of *emotional* harm can suffice." *In re Pederson*, 331 Mich App 445, 473; 951 NW2d 704 (2020) (quotation marks and citation omitted).

In this case, respondent testified that she had been addicted to crack cocaine for almost 10 years. To respondent's credit, respondent completed inpatient substance abuse treatment at the Corcoran House in approximately April 2020 and did well in the program. However, respondent missed approximately 48 screens throughout the pendency of the case, three months had passed since her last drug screen, and there was no evidence that respondent was participating in any outpatient treatment for her substance abuse. At the termination hearing, the current caseworker testified that since she became involved in the case, respondent had been "on and off as far as services" and that respondent was currently noncompliant with services. Failure to comply with services was evidence that the children would be harmed if returned to respondent's care. See *In re White*, 303 Mich App at 711. Further, respondent's whereabouts were unknown at the time of termination, and respondent had not visited the children within a month. Therefore, the children were at risk of emotional harm if they were returned to respondent's care. See *In re Pederson*, 331 Mich App at 473. For these reasons, we are not left with a definite and firm conviction that a mistake has been made with respect to the trial court's determination that termination was proper under MCL 712A.19b(3)(j).[2] See *In re Schadler*, 315 Mich App at 408.

III. BEST INTERESTS

Respondent also argues that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

We review the trial court's determination that termination is in a child's best interests for clear error. *In re Schadler*, 315 Mich App at 408. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

When determining whether termination is in the best interests of the child, the trial court should place its "focus on the child rather than the parent." *Id*. at 411. "[T]he court may consider

---

[2] Because only one statutory ground is required to terminate a respondent's parental rights, we need not address respondent's argument that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), and (g). See *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). Further, because respondent does not argue that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(b) and (c)(*ii*), she has abandoned any arguments with respect to these statutory grounds. See *Martin v Martin*, 331 Mich App 224, 243; 952 NW2d 530 (2020) (stating that "[a]bsent any meaningful discussion of [an] issue, there simply is nothing for this Court to review").

the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Further, "[a] parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019).

"Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests[.]" *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citations omitted).

In this case, the trial court found that respondent had a bond with the children. Respondent argues that because the children were doing well in the paternal grandmother's care, relative placement should have been given the greatest weight against termination. The trial court noted that the children were placed with a relative and that it was required to explicitly consider this factor. Although the children's placement with the paternal grandmother weighed against termination, there were numerous other reasons supporting the termination of respondent's parental rights. The trial court properly recognized that respondent had a lengthy substance abuse history that resulted in instability and that the children were at risk of harm if respondent relapsed. In contrast, the paternal grandmother testified that she was willing to adopt the children, and as the trial court found, the paternal grandmother was able to provide the children with the permanency and stability they needed. Further, as the trial court stated, respondent's compliance was "sporadic at best" and respondent failed to benefit from services. Based on the record before us, we cannot conclude that the trial court clearly erred when finding termination of respondent's parental rights was in the minor children's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause